**IN THE UNITED STATES DISTRICT COURT FOR**
**THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**CHARLESTON DIVISION**

**ANTHONY D. WRIGHT**

> **Plaintiff,**

**v.**

> Civil Action No. \_\_2:24-cv-474\_\_\_\_

**G. RUSSELL ROLLYSON Deputy**
**Commissioner of Delinquent and**
**Non-entered Lands, in his official**
**capacity only, and 21 WVC, LLC, f/k/a**
**WV COUNTY TAX CERT PURCHASES 2021, LLC,**

> **Defendants.**

## COMPLAINT

1.      This civil rights action seeks damages for the unconstitutional taking without just compensation of a modest home owned by Plaintiff Anthony D. Wright since 2008.

2.      Defendants, acting in concert under color of state law, deprived Mr. Wright of his home pursuant to a long-standing practice of collecting small debts owed for unpaid property taxes by confiscating homes worth substantially more than the debt owed, then transferring title and the full value of the property to third party speculators, without paying just compensation for the difference between the home's value and the tax debt, in violation of the Fifth Amendment and the constitutional prohibitions against excessive fines, invidious discrimination, and arbitrary and capricious government actions.

3.       Plaintiff alleges this practice is unconstitutional, punitive, imposes sanctions grossly disproportionate to the wrong, discriminatory, lacks a valid public purpose, and

specifically that the Defendants' failure to pay just compensation for the taking of his home violated his constitutionally protected property rights.

## JURISDICTION

4.      Plaintiff brings his federal constitutional claims pursuant to 42 U.S.C. § 1983.

5.      This Court has jurisdiction over those claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343 (3) and (4).

6.      Venue is proper in the Charleston Division of the District Court for the Southern District of West Virginia because defendant Rollyson operates in that district and the taking at issue occurred there.

## PARTIES

7.      Plaintiff Anthony D. Wright is a natural person who at all times relevant resided in his home at 1205 Greenbrier Street, Bluefield, Mercer County, West Virginia.

8.      The home is a modest three bedroom, 1 bath structure of less than 1700 square feet sitting on a small lot less than 6000 square feet in size. The home is nearly 100 years old.

9.      Mr. Wright is retired from decades-long employment as an inventory manager at Princeton Community Hospital. He lives on a fixed income from retirement benefits.

10.     Defendant G. Russel Rollyson is the Deputy Commissioner of Delinquent and Non-entered Lands for the State of West Virginia. From his Kanawha County office, Defendant Rollyson exercises final state authority delegated to him to enforce and implement the state's statutory process for collecting real property taxes. Defendant Rollyson personally executed a tax sale deed under date of April 1, 2023, which deprived Plaintiff of ownership, legal title, all redemption rights, and the equity value of his home under color of law, transferring legal title,

2

ownership, and the unencumbered value of that home to defendant WV County Tax Cert Purch 2021, LLC at that Defendant's urging. Defendant Rollyson is sued in his official capacity only.

11.    Defendant 21 WVC LLC (known as WV County Tax Cert Purchases 2021, LLC before a May 2023 name change) is a West Virginia limited liability corporation. The principal of 21 WVC LLC is Martin E. O'Boyle, a wealthy businessman who operates a national real estate firm based out of Deerfield Beach, Florida. In recent years, Mr. O'Boyle, with the aid of his son, a licensed lawyer in West Virginia, has engaged in the purchase of real estate tax liens in West Virginia as a for-profit enterprise.

12.    Defendant 21 WVC LLC purchased a $79.89 real estate property tax lien on plaintiff's home by bidding $2700.00 for that lien at a November 8, 2021, tax lien auction conducted under state law.

13.    About a year later, Defendant 21 WVC LLC applied to Defendant Rollyson for issuance under color of state law of a tax deed in its favor to deprive Plaintiff of all his rights, legal title, and ownership of his home and the equity in it by giving that title and equity to Defendant 21 WVC LLC.

14.    The deed Defendant 21 WVC LLC requested was signed by Defendant Rollyson under an April 1, 2023, date but was not recorded until February 20, 2024, at which time it was docketed at Deed Book 38, Page 680 of the records of the Clerk of the County Commission for Mercer County.

15.    As shown by these facts and those pleaded throughout the Complaint, Defendant 21 WVC LLC was a willing participant in the joint process and actions with Defendant Rollyson which violated Plaintiff's constitutional rights. Defendant 21 WVC LLC intentionally sought and

invoked the state action depriving Plaintiff of his home and was the primary beneficiary of the cooperative state actions complained of herein.

16.      Defendant 21 WVC LLC was therefore a joint tortfeasor acting with and in concert with Defendant Rollyson under color of state law to deprive Plaintiff of his property and his rights. Defendant 21 WVC LLC is jointly and severally liable for Plaintiff's injuries, the loss of his rights, and all damages thereby suffered.

**WEST VIRGINIA PRACTICE FOR COLLECTING UNPAID REAL ESTATE TAXES**

17.      As an alternative to other available methods of collection, West Virginia has elected to collect unpaid property taxes by auctioning off tax liens on properties with unpaid taxes to third party speculators. And

18.      The proceeds of the auction sale of the lien pays the taxes outstanding, accumulated interest, and the cost of the auction.

19.       It is not unusual for the speculators who participate in these auctions to bid many times more than the lien amount for unpaid taxes and costs, since owning the lien on a valuable parcel has the potential to produce windfall ownership of tens of thousands of dollars of valuable real estate, or more, for the speculator's minimal investment.

20.      That is because if the lien is not paid (or "redeemed") by the property owner after a single demand for payment, Defendant Rollyson, at the speculator's request, will issue a tax deed under color of state law transferring legal ownership and the full unencumbered value of the real estate to the speculator holding the tax lien.

21.      The tax deed Rollyson grants to the speculator holding the tax lien terminates the owner's equity of redemption, deprives the property owner of legal title to the home, and confiscates the entire value of the real estate from the owner, transferring title and that

4

unencumbered value to the third-party speculator, which pays nothing more than then the original tax lien purchase price to obtain the property.

22.     Consequently, in exchange for a relatively small speculative investment, the third-party tax lien purchaser may well end up with a windfall return in the form of good, transferable legal title to a parcel of real estate with many times the value of the tax lien price, clear of all liens and claims.

## STATEMENT OF FACTS

23.     In 2008, Anthony D. Wright lived just down the street from the home at 1205 Greenbrier Street in Bluefield, West Virginia.

24.     The house at 1205 Greenbrier then had been abandoned for about five years after a VA foreclosure.

25.     Water damage had rotted through the floors and the home was uninhabitable.

26.     Mr. Wright saw potential in the home, however, and purchased it from the VA for $7,500.00.

27.     Over the next year, Mr. Wright did significant repairs to the house so that he was finally able to take up residence there in 2009.

28.     At various times since then, Mr. Wright attempted to sell the old Greenbrier Street home in which he previously lived, but no one has ever shown any interest in purchasing that other property.

29.     Mr. Wright eventually decided to abandon the other property.

30.     In 2018, Mr. Wright retired after working forty-two years at Princeton Memorial Hospital.

31.    In July 2020, Mr. Wright went to the local tax office to pay the real estate taxes on his home at 1205 Greenbrier and to submit his application for a homestead exemption on his property taxes for that property.

32.    Mr. Wright knew taxes were also due on the other Greenbrier Street property in which he had lived in 2008, but he was not intending to pay the taxes on that abandoned property, preferring that the state take the unmarketable property for unpaid taxes because he did not have the means to pay the taxes or make improvements to the abandoned and unsellable property.

33.    Mr. Wright submitted his homestead tax exemption application and tendered payment of the taxes then due on his home at 1205 Greenbrier.

34.    Unbeknownst to Mr. Wright until after the later events pleaded below, the payment he tendered for the taxes due on the home in which he was living was mistakenly applied instead to taxes on the abandoned property.

35.    Mr. Wright's homestead exemption on the property at 1205 Greenbrier was granted soon thereafter.

36.    Because Mr. Wright's July 2020 payment of the taxes on his 1205 Greenbrier home were misapplied, on November 8, 2021, the Sheriff of Mercer County conducted a tax auction to sell a $79.89 tax lien on Mr. Wright's home.

37.    Defendant 21 WVC LLC under its former name of WV County Tax Cert Purchases LLC, purchased that tax lien on Plaintiff's home with a winning bid of $2,700.00, a bid more than thirty times the amount of tax and interest that went unpaid due the local tax clerk's error.

38.    The $2,540.11 surplus of the successful bid over the taxes and interest and sale costs was retained by the government and never paid to Plaintiff.

6

39.     In the fall of 2022, 21 WVC LLC asked defendant Rollyson's office to issue it a tax deed depriving Plaintiff of his rights in and ownership of the 1205 Greenbrier Street home, terminating his right of redemption of that home, and transferring titled ownership of that property and its entire value to 21 WVC LLC, free and clear, without payment of any sums beyond the amount 21 WVC LLC originally paid for the tax lien.

40.     Plaintiff thereafter received a Notice of Right to Redeem property on which were owed unpaid taxes for the year 2020.

41.     The Notice identified the parcel to which it related only by a legal description, and not a street address.

42.     Plaintiff believed he had paid the 2020 taxes on his home at the same time he had applied for his homestead exemption.

43.     Plaintiff did not know the tax payment tendered for the taxes due on his home had been mistakenly applied to the abandoned property.

44.     Plaintiff was ignorant of the legal description of his current home and did not recognize or understand that the legal description listed on the Notice to Redeem was the legal description for his home, and not that of the abandoned Greenbrier Street property.

45.     Had Defendants provided Plaintiff meaningful notice by identifying the property to which the Notice related by its street address, as most homeowners would understand and expect, Plaintiff would have understood that some error had occurred after his payment of the 2020 taxes and would have been able to straighten out the error and/or pay the redemption amount demanded before the deadline listed in the Notice.

46.    Because the Notice did not provide meaningful notice in a reasonably understandable form, Plaintiff mistakenly assumed the notice applied to the real estate he had abandoned.

47.    Consequently, although he could have paid timely the redemption amount had the Notice informed him of the street address to which it related so that Plaintiff realized the Notice applied to his home, Plaintiff took no action.

48.    The Notice of Right to Redeem required payment of $1,096.05 to the Sheriff of Mercer County to redeem and $35 payable to the WV State Auditor. The redemption amount in total demanded payment of hundreds of dollars in excess of the actual unpaid 2020 taxes, including amounts paid to the Defendant, 21 WV LLC, for preparing its request to Defendant Rollyson to issue it a tax deed.

49.    At the time just before Defendant Rollyson deprived Plaintiff of the ownership of his home, third party websites often used and relied upon by real estate professionals to assess the fair market value of real estate assessed the home at 1205 Greenbrier as having a fair market value of between $65-$69,000.00 (*i.e.,* CoreLogic ($69,200.00); Quantarium ($66,167.00); Realtor.com ($67,951.00); Redfin ($65,076.00)).

50.    On April 1, 2023, by exercise of his state authority as Deputy Commissioner of Delinquent and Non-entered Lands for the State of West Virginia, Defendant Rollyson signed a tax deed in favor of defendant 21 WVC LLC, terminating Mr. Wright's equity of redemption in his home, depriving him of all right, title, equity, and interest in the home at 1205 Greenbrier Street and transferring legal title to that home and its full unencumbered value to defendant 21 WVC LLC, free and clear of any claim by Plaintiff or others.

51.     Plaintiff learned of that taking only a few weeks ago when 21 WVC LLC sent him a thirty-day notice to vacate.

52.     Thereafter, Plaintiff sought to redeem his home from 21 WVC LLC by paying it the redemption amount and additional interest and expenses, but 21 WVC LLC refused to accept the tender or to reconvey the home.

53.     At all times relevant before that deprivation, Plaintiff had a constitutionally protected property interest in the ownership of his home, the equity therein, and his equitable right of redemption of that home.

54.     The April 1st taking confiscated these valuable, protected interests from Plaintiff, in furtherance of the long-standing practice of taking the entire value of tax delinquent properties from the titled owners thereof, regardless of how little might be due in taxes, terminating the owners' right of redemption, and then transferring legal title and the entirety of the value of that property to the windfall benefit of third-party tax lien speculators like 21 WVC LLC.

55.     This practice lacks and does not serve any valid public purpose but confiscates and transfers to these third parties as a windfall legal title to and the entire value of the property, value almost always in excess of the actual amount of any taxes, fines and penalties actually owed.

56.     Moreover, the practice does not serve solely a remedial purpose.

57.     The West Virginia Legislature has noted that a prime purpose of the tax collection Defendant Rollyson utilizes is to confiscate property from poor people who have trouble keeping current on their tax bills in order to give that property to richer parties with greater resources to pay taxes promptly. *See* West Virginia Code § 11A-3-1 (2) ("the Legislature declares that its purposes in the enactment of this article are . . . . (2) to provide for the transfer of delinquent and

non-entered lands to those that will make beneficial use of said lands who are more responsible to, or better able to bear, the duties of citizenship than were the former owners").

58.     The penalty Plaintiff suffered from loss of title and equity in his home at 1205 Greenbrier Street bears no correlation to any actual loss of tax revenue or costs incurred in collecting property taxes owed on that home or from enforcing the law requiring payment of real estate taxes, and imposed a sanction and penalty on Plaintiff grossly disproportionate to any wrongdoing attributable to him.

59.     Thereafter Defendants failed to pay Plaintiff just compensation for the value of the real property taken from him over and above the taxes owed, or the surplus tax lien price obtained from 21 WVC LLC in excess of the taxes actually due.

60.     In addition, Plaintiff, who was subject to collection of a debt owed the government, was invidiously discriminated against by the defendants.

61.     In West Virginia, involuntary liens on real property held by non-government creditors can only be collected and enforced through judicial foreclosure, a process in which the property owners may assert defenses and counterclaims. If the lien is not paid and judgment is entered against the property owner, the property to which the lien applies is sold at public auction. Any member of the public may bid at this auction and the property is sold to the highest bidder.

62.     The price paid by the public auction's winning bidder is allocated first to pay the costs of the sale and then to pay the lienholder. Any remainder represents the owner's equity and is paid to the property owner, including a minimum amount constituting a homestead exemption guaranteed by the West Virginia Constitution.

63.     On the other hand, homeowners like Plaintiff whose property is subject to unpaid an unpaid tax lien owed the government are afforded no formal process for administratively

contesting the debt or the amount claimed, proving prior payment, or for recovering the surplus value of the property.

64.     Moreover, without judicial proceeding Defendant Rollyson, acting in concert with and upon the application of third-party speculators like Defendant 21 WVC LLC, customarily confiscates the entirety of the tax debtor's title interest and equity in the property without exemption, limit, compensation, payment of just compensation, or even payment of the amount of the constitutional homestead exemption.

65.     Plaintiff would not have lost the entirety of the fair market value of his home, or the amount of the usual homestead exemption, had 21 WVC LLC held an involuntary lien on Plaintiff's property arising from a private debt, nor would Defendants have been authorized to take from him the full value of his home as a windfall because of an unpaid $79.89 private debt with a redemption amount of $1,096.05.

66.     Plaintiff was injured as the result of Defendants' unconstitutional and wrongful acts in concert, including by loss of legal title and ownership of the home at 1205 Greenbrier Street Avenue, loss of his equitable redemption rights, and confiscation of all rights and equity held in that home before these events.

67.     Plaintiff also suffered other injuries, including worry, anxiety, mental and emotional distress, including the cost of responding to Defendant 21 WVC LLC's action to evict him from the home and the injuries and damages related to his pending eviction therefrom.

## COUNT I – VIOLATION OF 42 U.S.C. § 1983
### Uncompensated Taking in Violation of the United States Constitution

68.     Plaintiff incorporates all preceding paragraphs by reference as if fully restated herein.

69.    As shown by the events and circumstances pleaded above, Defendants, pursuant to policy, custom and practice, acting in concert under color of state law have deprived Plaintiff of rights, privileges and immunities granted by the United States Constitution, including his constitutionally protected property interest in his home.

70.    Specifically, Defendants acted in concert to take Plaintiff's property other than for valid public use and without payment of just compensation, in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

71.    Plaintiff has been and continues to be injured as a result of Defendants' violation of his constitutional rights under the Fifth Amendment.

### COUNT II – VIOLATION OF 42 U.S.C. § 1983
### Excessive Fine in Violation of the United States Constitution

72.    Plaintiff incorporates all preceding paragraphs by reference as if fully restated herein.

73.    As shown by the events and circumstances pleaded above, Defendants, pursuant to policy, custom and practice, acting in concert under color of state law deprived Plaintiff of rights, privileges and immunities granted by the United States Constitution.

74.    The penalty inflicted by Defendants' confiscation of all of Plaintiff's property interests in his home at 1205 Greenbrier Street was not solely remedial and bore no correlation to any actual loss of tax revenue or costs of enforcing the tax laws attributable to any wrongdoing by Plaintiff being grossly disproportionate thereto.

75.    By confiscating the entire fair market value of Plaintiff's home for non-payment of $79.89 in property taxes, interest and fees, Defendants, acting in concert, have imposed and enforced an excessive fine on Plaintiff, in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

76.     Plaintiff was injured and continues to be injured as a result of Defendants' violation of his constitutional rights under the Eighth Amendment.

## COUNT III – VIOLATION OF 42 U.S.C. § 1983
## Denial of Due Process

77.     Plaintiff incorporates all preceding paragraphs by reference as if fully rewritten herein.

78.     As shown by the events and circumstances pleaded above, Plaintiff's ownership of the home located at 1205 Greenbrier Street was a property interest recognized by the United States Constitution.

79.     Likewise, Plaintiff had a constitutionally protected property interest in his redemption rights to that home and the equity he held in it.

80.     Plaintiff was deprived of his property interest in the home at 1205 Greenbrier by state action without the provision of prior, meaningful notice that would have allowed him to protect his own interests and prevent that deprivation, in violation of his procedural due process rights.

81.     Moreover, as shown by the events and circumstances pleaded above, Defendants' actions in concert under color of state law, by confiscating legal title to the Plaintiff's home and his entire equity in it to collect a relatively small sum in unpaid property taxes, a sum which Plaintiff in fact timely paid, were arbitrary and capricious and in violation of substantive due process, a right, privilege and immunity granted Plaintiff by the Fourteenth Amendment to the United States Constitution.

82.     Plaintiff was injured and continues to be injured as a result of Defendants' violation of his constitutional rights to procedural and substantive due process.

## COUNT IV – VIOLATION OF 42 U.S.C. § 1983
### Denial of Equal Protection

83.     Plaintiff incorporates the preceding paragraphs by reference as if fully rewritten herein.

84.     Consistent with the constitutional guarantee of equal protection and the right to equal treatment before the law, the government may not impose unduly harsh, punitive or discriminatory terms when collecting debts merely because the obligation is owed a public treasury rather than to a private creditor.

85.     The government violates these precepts, and the guarantee of equal protection, when it unreasonably and punitively denies those who owe a debt to the government the same exemptions and protections against confiscation possessed by those who owe private civil debts. *See James v. Strange*, 407 U.S. 128, 138 (1972).

86.     Had Plaintiffs owed $79.89 to a private creditor secured by an involuntary lien on their home, the enforcement of that lien would have required its holder to file a judicial action against Plaintiffs, who would have been entitled to present defenses to foreclosure of that lien and sale of their home, such as the fact that the debt was timely paid but mistakenly credited by the creditor.

87.     Even if his defense were unsuccessful, Plaintiff then would have had a right to have the home sold to the highest bidder upon open, competitive bidding at public auction, rather than suffer a private transfer by Defendant Rollyson to 21 WVC LLC, a speculator, for consideration paid only to Defendant Rollyson.

88.     Moreover, upon such sale Plaintiff would be entitled to recover from the sale proceeds after payment of costs (i) the excess of the total sale price over the amount of the lien, or (ii) at least the amount of his constitutionally guaranteed homestead exemption.

89.     The Defendants' actions in concert under color of state law, as challenged here, invidiously denied Plaintiff each of these procedural and substantive rights and protections simply because he owed a debt to the state rather than to a private creditor.

90.     The differing treatment afforded homeowners whose property is subject to a lien for unpaid property taxes and homeowners whose property is subject to an involuntary lien in the same amount owed to a private creditor is punitive, arbitrary, unreasonable, and invidiously discriminatory, such that Plaintiff was denied the equal protection of the law.

91.     Had Plaintiff not been subject to invidious discrimination in this fashion, he would not have been harmed to the extent that Defendants here injured his constitutionally protected property interests.

92.     Consequently, acting in concert under color of state law, Defendants deprived Plaintiff of rights, privileges, and immunities granted him by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

93.     Plaintiff was injured and continues to be injured as a result of Defendants' violation of his constitutional rights to equal protection.

**WHEREFORE**, Plaintiffs respectfully requests the following relief:

(a)     That the Court declare that Defendants violated Plaintiff's constitutional rights as alleged;

(b)     That the Court declare the tax deed signed by Defendant Rollyson on April 1, 2024, void in that it was executed without the provision of meaningful prior notice to Plaintiff such that reasonably would have allowed him to understand the true import of the Notice and so act to prevent loss of his home;

(c)     Alternatively, that the Court declare Defendants violated Plaintiff's Fifth

Amendment right to receive just compensation for the taking of Plaintiff's home by

Defendant Rollyson's issuance of a tax deed in favor of Defendant 21 WVC LLC

at its request on April 1, 2024, and that Plaintiff is therefore entitled to just

compensation for the fair market value of his home after deduction of the tax

amount owed

(d)     To enter judgment against Defendant 21 WVC LLC for such just compensation and

Plaintiff's actual and compensatory damages as suffered and pleaded above;

(e)     That the Court award Plaintiff reasonable attorney's fees and the costs of this action

pursuant to 42 U.S.C. § 1988(b); and

(f)     That the Court award Plaintiff such other relief to which he may be entitled in law

or equity.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

**Plaintiff,**
**ANTHONY D. WRIGHT,**
**By Counsel:**

/s/ Gary M. Smith
Gary M. Smith (WVSB # 12602)
Bren J. Pomponio (WVSB # 7774)
MOUNTAIN STATE JUSTICE, INC.
1217 Quarrier Street
Charleston, WV 25301
Office: (304) 344-3144
Fax: (304) 344-3145
Email: gary@msjlaw.org
Email: bren@msjlaw.org
*Counsel for Plaintiffs*