## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### AT CHARLESTON

ANTHONY D. WRIGHT,

      Plaintiff,

v.                                                     CIVIL ACTION NO.  2:24-cv-00474

G. RUSSELL ROLLYSON *in his official capacity as*
*Deputy Commissioner of Delinquent and Non-entered Lands* and
21 WVC, LLC, f/k/a WV COUNTY TAX
CERT PURCHASES 2021, LLC

      Defendants.

### <u>MEMORANDUM OPINION AND ORDER</u>

Pending are Defendant Deputy Commissioner G. Russell Rollyson's ("Deputy Commissioner Rollyson") Motion to Dismiss [ECF 8], filed October 17, 2024, and Defendant 21 WVC, LLC's ("WVC") Motion to Dismiss [ECF 12], filed November 4, 2024. Plaintiff Anthony D. Wright ("Mr. Wright") responded in opposition to Deputy Commissioner Rollyson [ECF 14] on November 12, 2024, to which Deputy Commissioner Rollyson replied [ECF 16] on November 19, 2024. Mr. Wright responded in opposition to WVC [ECF 15] on November 19, 2024, to which WVC replied [ECF 18] on December 2, 2024. Also pending is Mr. Wright's Motion for Leave to File Additional Authority in Support of Memoranda Opposing Motions to Dismiss Complaint [ECF 21], filed January 13, 2025. The Court **GRANTS** the Motion for Leave. [**ECF 21**].

This case deals with the issuance of a tax deed to a lien purchaser, WVC, by Deputy Commissioner Rollyson, Deputy Commissioner of Delinquent and Non-entered Lands in the West Virginia Auditor's Office. The tax deed covered property formerly owned by Mr. Wright following

his nonpayment of taxes due to a mistaken belief that he was compliant with payments. The matter is ready for adjudication.

## I.

In 2008, Mr. Wright lived in a home on Greenbrier Street ("Greenbrier Property I") in Bluefield. [ECF 1 at ¶ 23]. A house on the same street ("Greenbrier Property II") was abandoned for about five years after a Department of Veterans Affairs ("VA") foreclosure. [*Id.* at ¶ 24]. Mr. Wright purchased Greenbrier Property II from the VA for $7,500. [*Id.* at ¶ 26]. He then began living at Greenbrier Property II in 2009. [*Id.* at ¶ 27]. He attempted unsuccessfully to sell Greenbrier Property I and eventually abandoned that property. [*Id.* at ¶ 28–29].

In July 2020, Mr. Wright tendered payment of his real estate taxes on Greenbrier Property II. [*Id.* at ¶ 31, 33]. Mr. Wright deliberately chose not to pay the taxes due on Greenbrier Property I, contemplating the sovereign would eventually take the unmarketable property. [*Id.* at ¶ 32]. Unbeknownst to Mr. Wright, his payment was mistakenly applied to Greenbrier Property I rather than Greenbrier Property II. [*Id.* at ¶ 34].

On November 8, 2021, the Mercer County Sheriff auctioned the $79.89 tax lien on Greenbrier Property II. [*Id.* at ¶ 36]. WVC placed the winning bid and purchased the tax lien for $2,700. [*Id.* at ¶ 37]. Mr. Wright admits he received a Notice of Right to Redeem ("Notice"), which identified Greenbrier Property II by its legal description, "Lot 2 SEC 54 Greenbrier, District: 3, Map 11, Parcel: 0103 0000, Account # 06235433." [*Id.* at ¶ 40–41; ECF 9 at 2]. Inasmuch as Mr. Wright believed he paid the taxes on Greenbrier Property II and was unfamiliar with the legal description of that property, he mistakenly assumed the Notice applied to Greenbrier Property I and took no action. [ECF 1 at ¶ 42–43, 46–47].

On April 1, 2023, Deputy Commissioner Rollyson signed a tax deed transferring ownership of Greenbrier Property II to WVC. [*Id.* at ¶ 50]. Mr. Wright did not learn of the conveyance until he received a 30-day notice to vacate in August 2024. [*Id.* at ¶ 51]. Mr. Wright attempted to redeem Greenbrier Property II by paying the redemption amount with additional interest and expenses, but WVC refused the offer. [*Id.* at ¶ 52].

On September 3, 2024, Mr. Wright instituted this action for alleged violations of his civil rights. [ECF 1]. He pleads three claims against WVC and Deputy Commissioner Rollyson, in his official capacity.[1] Count I asserts a Fifth Amendment claim for a putative unconstitutional taking of Greenbrier Property II without just compensation. [*Id.* at ¶ 68–71]. Count II alleges Eighth and Fourteenth Amendment violations for an excessive fine. [*Id.* at ¶ 72–76]. Count III alleges failure to provide proper, meaningful notice prior to issuing a tax deed to WVC, resulting in an unconstitutional property deprivation in violation of the Fourteenth Amendment. [*Id.* at ¶ 77–82]. All of the claims use as their remedy vehicle 42 U.S.C. § 1983.[2]

---

[1]    Inasmuch as the Court grants herein WVC and Deputy Commissioner Rollyson's Motions to Dismiss [ECF 8, 12] and dismisses Counts I, II, and III, the January 15, 2025, Stipulation of Voluntary Dismissal of Plaintiff's Substantive Due Process and Equal Protection Claims pursuant to *Federal Rule of Civil Procedure* 41(a)(1)(A)(ii) [ECF 23] now acts as a functioning Rule 41 stipulation of dismissal. [ECF 23]. Accordingly, the Court **DENIES AS MOOT** WVC's second motion to dismiss [**ECF 29**] and Mr. Wright's motion to sever claims [**ECF 34**].

[2]  Mr. Wright names WVC as a Defendant herein inasmuch as it was the "primary beneficiary" of the tax lien for Greenbrier Property II. [ECF 1 at ¶ 15]. He contends WVC was a "joint tortfeasor acting with and in concert with Defendant Rollyson under color of state law." [*Id.* at ¶ 16]. WVC is a private construction company. It appears WVC concedes that there is a sufficient ground under controlling precedent to establish that any actions by it were made under color of law.

Deputy Commissioner Rollyson now moves pursuant to Rule 12(b)(6) and Rule 12(b)(7) to dismiss Mr. Wright's Complaint. [ECF 8]. WVC additionally moves pursuant to Rule 12(b)(6) and Rule 12(b)(1)[3] to dismiss Mr. Wright's Complaint. [ECF 12].

## II.

### A.    *Governing Standard*

*Federal Rule of Civil Procedure* 8(a)(2) requires that a pleader provide "a short and plain statement of the claim showing . . . entitle[ment] to relief." Fed. R. Civ. P. 8(a)(2); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).  Rule 12(b)(6) correspondingly permits a defendant to challenge a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

The required "short and plain statement" must provide "fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted); *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015).   Additionally, the showing of an "entitlement to relief" amounts to "more than labels and conclusions." *Twombly*, 550 U.S. at 555. It is now settled that "a formulaic recitation of the elements of a cause of action will not do." *Id.*; *McCleary-Evans*, 780 F.3d at 585; *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020), *cert. denied*, 209 L. Ed. 2d 122, 141 S. Ct. 1376 (2021); *Giarratano v. Johnson*, 521 F.3d 298, 304 (4th Cir. 2008).

---

[3] WVC moves to dismiss Mr. Wright's Complaint pursuant to *Federal Rule of Civil Procedure* 12(b)(1) inasmuch as his claims are assertedly subject to collateral estoppel and *res judicata*. That is an improper use of Rule 12(b)(1). The Court **DENIES** WVC's Motion to Dismiss [**ECF 12**] pursuant to Rule 12(b)(1). *See Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 282 (2005) ("Preclusion is not a jurisdictional matter."); *Seldin v. Seldin*, 879 F.3d 269, 272 (8th Cir. 2018) ("[T]he district court erred when it found that *res judicata* and collateral estoppel were sufficient grounds to grant a Rule 12(b)(1) motion.").

The complaint need not "forecast evidence sufficient to prove the elements of [a] claim," but it must "allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Robertson v. Sea Pines Real Est. Cos., Inc.*, 679 F.3d 278, 291 (4th Cir. 2012)) (internal quotation marks omitted). Stated another way, the operative pleading need only contain "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting the opening pleading "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). In sum, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Robertson*, 679 F.3d at 288.

As noted in *Iqbal*, the Supreme Court has consistently interpreted the Rule 12(b)(6) standard to require a court to "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Twombly*, 550 U.S. at 555–56); *see also S.C. Dep't of Health & Env't Control v. Com. & Indus. Ins. Co.*, 372 F.3d 245, 255 (4th Cir. 2004) (citing *Franks v. Ross*, 313 F.3d 184, 192 (4th Cir. 2002)). The court is required to "draw[] all reasonable . . . inferences from those facts in the plaintiff's favor." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

### III.

#### A.     *Failure to State a Claim*

#### 1. Count I -- Fifth Amendment Claim

Mr. Wright alleges an unconstitutional taking without just compensation by Deputy Commissioner Rollyson and WVC in violation of the Fifth Amendment. The claim is based upon

Defendants' alleged failure to pay just compensation for the surplus tax lien price obtained over the amount of the taxes owed. [ECF 1 at ¶ 59].

Deputy Commissioner Rollyson contends tax lien sales do not violate the Takings Clause inasmuch as the government "may hold citizens accountable for tax delinquency by taking their property" and that property taxes "are not themselves a taking." [ECF 8 at 7–8 (quoting *Jones v. Flowers*, 547 U.S. 220, 234 (2000); *Tyler v. Hennepin Cnty.*, 598 U.S. 631, 637 (2023))]. He is correct. *See Tyler*, 598 U.S. at 637 (stating property taxes "are not themselves a taking, but are a mandated 'contribution from individuals . . . for the support of the government . . . for which they receive compensation in the protection which government affords.'") (quoting *Cnty. of Mobile v. Kimball*, 102 U.S. 691, 703 (1881)). Mr. Wright, however, does not challenge the taxes themselves. He asserts that failure to compensate him for the "excess of the value of the home over the amount of the tax debt owed" constitutes a taking without just compensation. [ECF 14 at 8]. WVC supplemented Deputy Commissioner Rollyson's argument by contending there is no unconstitutional taking when a plaintiff is given the process to obtain the surplus funds from a tax lien sale. [ECF 13 at 2].

The Fifth Amendment's Takings Clause provides that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V. There is a well-established right to the surplus value from a property or tax lien sale to satisfy delinquent taxes. *See Tyler v.*, 598 U.S. at 639, 642 ("[A] taxpayer is entitled to the surplus in excess of the debt owed"). In *Tyler*, the High Court concluded a Takings claim is present when a county retains the surplus value of the sale after an owner fails to pay property taxes. *Id.* at 635–39. While the County had authority "to sell [the] home to recover the unpaid property taxes, . . . it could not use the toehold of the tax debt to confiscate more property than was due." *Id.* at 639. This does not mean,

however, that a Fifth Amendment claim arises every time the surplus proceeds of a sale are withheld from a delinquent taxpayer. There is no Takings Clause violation when a sovereign's statutory scheme "provides [an] opportunity for the taxpayer to recover the excess value." *Id.* at 644; *see also Nelson v. City of New York*, 352 U.S. 103, 110 (1956).

West Virginia's statutory treatment of a delinquent property owner's right to surplus does just that:

> The former owner of any delinquent or nonentered lands sold pursuant to sections forty-five and forty-eight of this article, his heirs or assigns, shall be entitled to the surplus received from the sale over and above the taxes and interest charged or chargeable thereon including all costs of the sale, if his or their claim be filed in the circuit court of the county in which the land is situated within two years after the date of confirmation of said sale. If no claim is filed with the court within the two years, then such surplus shall be paid by the sheriff to the Auditor for credit to the general school fund.

W. Va. Code § 11A-3-65.

This two-year window affords delinquent taxpayers a generous time period to recover the surplus value of the property above the debt owed. It exceeds the low threshold previously suggested by the Supreme Court. *See Tyler*, 598 U.S. at 644 (noting that the governing ordinance in *Nelson* provided a property owner only 20 days to ask for the surplus from any tax sale).

Mr. Wright neglected to seasonably seek the surplus. Inasmuch as the governing statute does not "'absolutely preclud[e] an owner from obtaining the surplus proceeds of a [tax] sale,' but instead simply define[s] the process through which the owner could claim the surplus," there is no unlawful take. *See id.*

Accordingly, Count I is **DISMISSED** for failure to state a claim, and the Motions to Dismiss [**ECF 8, 12**] are **GRANTED** to the same extent.

### 2. Count II -- Eighth Amendment Claim

Mr. Wright alleges the "tax collection process by which Plaintiff suffered loss of his home and tens of thousands of dollars of value in excess of the taxes actually owed had a punitive effect." [ECF 14 at 9]. Deputy Commissioner Rollyson contends the Excessive Fines Clause is inapplicable inasmuch as the West Virginia land sales statutes are purely remedial and not punitive in nature. [ECF 8 at 11]. He further contends the Excessive Fines Clause does not apply where there is no criminal culpability involved. [*Id.* at 9]. WVC joins these arguments.

The Eighth Amendment, applicable to the States through the Fourteenth Amendment, prohibits the imposition of excessive fines as a form of punishment. *See* U.S. Const. amend. VIII; *Timbs v. Indiana*, 586 U.S. 146, 149–50 (2019); *Korangy v. U.S. F.D.A.*, 498 F.3d 272, 277 (4th Cir. 2007). Our Court of Appeals has established that civil penalties fall within the Eighth Amendment's purview, at least so far as excessive fines are concerned. *Korangy*, 498 F.3d at 277 (citing *Austin v. United States*, 509 U.S. 602, 610 (1993)). Yet only civil penalties with a punitive purpose, even in part, so fall. *Id.* In such instances, the penalty is deemed excessive if it is "grossly disproportional to the gravity of [the] offense." *Id.* (quoting *United States v. Bajakajian*, 524 U.S. 321, 334 (1998)). The Clause is not concerned with civil penalties of a remedial nature. *Korangy*, 498 F.3d at 277.

The Legislature's purpose in enacting the tax sale scheme is plainly remedial. *See Rebuild Am., Inc. v. Spears*, No. 2:08-cv-845, 2010 WL 454490, at *4 (S.D.W. Va. Feb. 2, 2010) (noting the Legislature considered the assurance of the prompt payment of tax obligations and the avoidance of taking property from delinquent owners unless sufficient notice is given); *Wells Fargo Bank, N.A. v. UP Ventures II, LLC*, 223 W.Va. 407, 410–11, 675 S.E.2d 883, 886–87 (2009) (noting the Legislature's purpose behind the statutory tax scheme is to provide efficient

enforcement of tax claims, provide adequate notice to delinquent property owners, and conduct the tax sales in an efficient manner); *Folse v. Rollyson*, 249 W. Va. 389, 394, 895 S.E.2d 244, 249 (Ct. App. 2023) ("The tax lien system's purpose of encouraging quick and efficient tax payment and collection is apparent, as both the purchaser's right to the deed and the owner's right to redeem require payment."). Regardless of the punitive effect perceived by a divested owner, the statutory scheme was not purposed to punish delinquent property owners. There is no Excessive Fines Clause violation.

Accordingly, Count II is **DISMISSED** as to Mr. Wright's failure to state a claim, and the Motions to Dismiss [**ECF 8, 12**] are **GRANTED** to the same extent.

### 3. Count III -- Fourteenth Amendment Procedural Due Process Claim

The Fourteenth Amendment provides "nor shall any state deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV § 1. "Before a State may take property and sell it for unpaid taxes, the Due Process Clause of the Fourteenth Amendment requires the government to provide the owner 'notice and opportunity for hearing appropriate to the nature of the case.'" *Jones v. Flowers*, 547 U.S. 220, 223 (2006) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)). The High Court has noted as follows:

> Due process does not require that a property owner receive actual notice before the government may take his property . . . . Rather, we have stated that due process requires the government to provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314.

*Id.* at 226 (internal citation omitted); *see also Plemons v. Gale*, 396 F.3d 569, 574 (4th Cir. 2005).

"The right of a landowner to have the statutory procedures complied with before he is deprived of his land is fundamental." *Archuleta v. US Liens, LLC*, 240 W. Va. 519, 525, 813

S.E.2d 761, 767 (2018) (quoting *State ex rel. Morgan v. Miller*, 177 W. Va. 97, 106, 350 S.E.2d 724, 734 (1986)) (cleaned up); s*ee also* Syl. pt. 1, *Cook v. Duncan*, 171 W. Va. 747, 301 S.E.2d 837 (1983) ("Persons seeking to obtain complete title to property sold for taxes must comply literally with the statutory requirements."). *West Virginia Code* section 11A-3-22(d) (2021) provides that, "in order to comply with the redemption notice requirements for Class II property, in addition to other notice requirements set forth in W. Va. Code § 11A-3-22, notice must also be addressed to 'Occupant' and mailed to the property." Syl. pt. 3*, Archuleta*, 240 W. Va. at 519, 813 S.E.2d at 761. "W. Va. Code § 11A-3-19 provides that a property owner must be served notice of the right to redeem property as outlined under W. Va. Code § 11A-3-22." *Id.* at 523, 813 S.E.2d at 765; W. Va. Code § 11A-3-19 (2018) (The purchaser of a tax lien shall "[p]repare a list of those to be served with notice to redeem and request the State Auditor to prepare and serve the notice as provided in § 11A-3-21 and § 11A-3-22."). *West Virginia Code* section 11A-3-21 (2021) provides the State Auditor prescribes the form for that notice.

Mr. Wright admits he received his notice to redeem. Nevertheless, he challenges the legal description as unreasonable and constitutionally deficient. He is mistaken. Defendants scrupulously adhered to the statutory procedures. Had Mr. Wright investigated the notice upon delivery, he would have readily understood the tax lien encumbered Greenbrier Property II. The street address for that property need not have been included.

Accordingly, Count III is **DISMISSED** as a result of Mr. Wright's failure to state a claim, and the Motions to Dismiss [**ECF 8, 12**] are **GRANTED** to the same extent.

**B.      *Failure to Join Mercer County Sheriff Under Rule 19***

Deputy Commissioner Rollyson also contends the Mercer County Sheriff is a necessary and indispensable party. Rule 12(b)(7) provides an action may be dismissed for failure

to join a required party under Rule 19. Fed. R. Civ. P. 12(b)(7). A district court is given "sound discretion" when determining whether a party is required under Rule 19. *McKiver v. Murphy-Brown, LLC*, 980 F.3d 937, 960 (4th Cir. 2020) (quoting *Coastal Modular Corp. v. Laminators, Inc.*, 635 F.2d 1102, 1108 (4th Cir. 1980)). Whether a party is required involves a two-step inquiry: first, whether the party is necessary to the action, and then, whether that party is indispensable. *Gunvor SA v. Kayablian*, 948 F.3d 214, 218 (4th Cir. 2020); *Owens-Illinois, Inc., v. Meade*, 186 F.3d 435, 440 (4th Cir. 1999). The failure to join a necessary and indispensable party requires dismissal. *Home Buyers Warranty Corp. v. Hanna*, 750 F.3d 427, 433 (4th Cir. 2014) (citing *Teamsters Local Union No. 171 v. Keal Driveaway Co.*, 173 F.3d 915, 918 (4th Cir. 1999)). Under Rule 19, an absent party is necessary if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a). Necessary parties must be joined to the action if feasible. If joinder is infeasible, the court must determine whether the party is indispensable under Rule 19(b).

Inasmuch as the necessary party would be the Mercer County Sheriff, an entity not claiming an interest to protect herein, the Court focuses only on whether the Mercer County Sheriff's absence prevents the Court from "accord[ing] complete relief among existing parties." Fed. R. Civ. P. 19(a)(1)(A). That matter is uncertain at best for at least two reasons. First, just compensation is sought only against WVC. Second, similar cases have not included the

responsible sheriff in the style. *See Folse v. McCusky*, No. 2:23-cv-561, 2024 WL 490339 (Feb. 8, 2024); *deWet v. Rollyson*, No. 1:21-cv-328, 2024 WL 2088428 (S.D.W. Va. May 9, 2024).

Accordingly, Deputy Commissioner Rollyson's Motion to Dismiss for failure to join a party under Rule 19 [**ECF 8**], is **DENIED**.

## IV.

Based upon the foregoing discussion, Defendants' Motions to Dismiss [**ECF 8, 12**] are **GRANTED IN PART** and this action is **DISMISSED** and **STRICKEN** from the docket.

The Clerk is directed to send a copy of this written opinion and order to counsel of record and any unrepresented party.

ENTER:   March 17, 2025

Frank W. Volk
Chief United States District Judge